UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LARRY SNIDER,

                  Plaintiff,

            -against-

RUSSEL V. LUGLI, and
NORTHWESTERN CONSULTANTS, INC.,

                  Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**
10-CV-4026 (SJF)(AKT)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    MAR 07 2013    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On September 2, 2010, plaintiff Larry Snider ("plaintiff" or "Snider") commenced this action against Russel V. Lugli ("Lugli") and Northwestern Consultants, Inc. ("Northwestern," and together with Lugli, "defendants") asserting claims for (1) breach of contract, (2) fraud, (3) breach of fiduciary duty, and (4) "breach of accounting duty" arising out of plaintiff's entry into a joint venture with defendants for "the purpose of the purchase, construction and sale of Twenty Four (24) or more entry level housing style housing units" on a parcel of land owned by Northwestern in Bay Shore, New York (the "Bay Shore joint venture"). [Docket Entry Nos. 1, 81-5] ("Compl."). Now before the Court is defendants' motion for summary judgment dismissing plaintiff's complaint. [Docket Entry No. 79]. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

I.    Background

Lugli, who resides in California, is the president and Chief Executive Officer of Northwestern, a Nevada corporation. Affidavit of Russel v. Lugli in Support of Defendants' Motion for Summary Judgment [Docket Entry No. 81] ("Lugli Aff.") at ¶ 1. On August 15, 2006, Northwestern entered into a joint venture agreement with Northwestern's former attorney,

1

Eliot Bloom, for the purpose of developing the property in Bay Shore. Lugli Aff. Ex. B (the "Joint Venture Agreement"). Under the Joint Venture Agreement, Bloom held a forty-five percent (45%) interest in the venture and Northwestern held a fifty-five percent (55%) interest. Lugli Aff. at ¶ 3.

On October 5, 2007, Bloom, Northwestern and Lugli executed an agreement under which Northwestern and Lugli agreed to pay Bloom four hundred fifty thousand dollars ($450,000.00) in three (3) installments in exchange for Bloom's forty-five percent (45.00%) interest in the Bay Shore joint venture and his promise "to provide all legal representation necessary to complete the [Bay Shore joint venture] with no fees to be charged." Lugli Aff. Ex. C. The first installment of one hundred thousand dollars ($100,000.00) was due to be paid on the date the buyout agreement was executed. Lugli Aff. Ex. E.

Bloom arranged for Harry Feingold, Bloom's friend, to introduce Lugli to plaintiff in order to recruit plaintiff as an investor and facilitate Bloom's exit from the venture. Lugli Aff. at ¶ 4; Defendants' Memorandum of Law in Support of Motion for Summary Judgment [Docket Entry No. 82] ("Def. Memo.") at 3. On October 5, 2007 (the same date on which Lugli and Northwestern were required to pay one hundred thousand dollars ($100,000.00) to Bloom under the buyout agreement), plaintiff, at the direction of Feingold, signed a check for one hundred two thousand five hundred dollars ($102,500.00) payable to "Savannah Development," a corporation alleged by defendants to have been owned and controlled by Feingold. Lugli Aff. at ¶ 6, Ex. F. Lugli testified that he "had no part in giving these instructions to [plaintiff], neither saw nor received any portion of [plaintiff's] money at any time," Lugli Aff. at ¶¶ 6-7, and that approximately seventy-five thousand dollars ($75,000.00) of plaintiff's money was transferred by Feingold to the personal bank account of Elizabeth Bloom, Bloom's wife. Lugli Aff. at ¶ 7.

Under an amended joint venture agreement executed on November 1, 2007 by Northwestern and plaintiff, plaintiff was granted a ten percent (10.00%) interest in the Bay Shore joint venture, Northwestern was granted a sixty-two and one-half percent (62.50%) interest, and Frank Johnston was granted a twenty-seven and one-half percent (27.50%) interest. Lugli Aff. at Ex. E (the "Amended Joint Venture Agreement").

II.   Procedural Background and Related Litigation

On August 11, 2009, Bloom commenced an action against Lugli and Northwestern in the Supreme Court of the State of New York, County of Nassau (the "Supreme Court"), by filing a motion for summary judgment in lieu of a complaint seeking to recover the last two (2) installments due under the buyout agreement, totaling three hundred fifty thousand dollars ($350,000.00). On November 19, 2009, the Supreme Court granted Bloom's motion for summary judgment, but the Appellate Division of the Supreme Court of the State of New York, Second Department (the "Appellate Division"), reversed the order, finding that Bloom failed to establish that the buyout agreement was an instrument for the payment of money only since Bloom had not shown that he satisfied his ongoing obligation to provide legal services in connection with the Bay Shore joint venture. Bloom v. Lugli, 81 A.D.3d 579, 916 N.Y.S.2d 139 (App. Div. 2011).

On remand, the Supreme Court denied Lugli's and Northwestern's motion for leave to amend their answer and again granted summary judgment to Bloom. However, by order dated January 16, 2013, the Appellate Division reversed, holding that Lugli and Northwestern had "raised triable issues of fact as to whether [Bloom] intentionally or negligently omitted the material fact that the Town's approval of the development of the [Bay Shore] project included certain conditions and restrictions that either could not be met or would be significantly difficult

to meet, and as to whether this information was kept from [Lugli and Northwestern] at the time that the buy-out agreement was executed." Bloom v. Lugli, No. 13207/09, Slip Op. at 5 (N.Y. App. Div. Jan. 16, 2013). Snider is not a party to the New York state action.

On November 3, 2010, Lugli and Northwestern commenced an action in this district against, inter alia, Eliot Bloom, Elizabeth Bloom, Eliot F. Bloom, P.C. (collectively, the "Bloom defendants"), Feingold,[1] Fire Island Seashell Company, Inc. (d/b/a Savannah Development Co.), and Snider,[2] asserting various claims related to the Bay Shore joint venture (arising both before and after Snider's involvement), including "unlawful sale of securities," conspiracy, breach of contract, fraud, negligent misrepresentation, rescission, unjust enrichment, breach of fiduciary duty and "financial elder abuse." Northwestern Consultants, Inc. v. Bloom, No. 10-CV-5087 (E.D.N.Y. Nov. 3, 2010) (the "Northwestern matter").

On May 19, 2011, the Bloom defendants moved to dismiss the complaint for lack of subject matter jurisdiction or, alternatively failure to join an indispensable party. [Docket Entry No. 30]. The case was reassigned to the Court on January 9, 2012, after Judge Bianco recused himself. On May 22, 2012, the Court denied the Bloom defendants' motion to dismiss the complaint. [Docket Entry No. 42]. At a conference held on July 11, 2012, the Court ordered this case consolidated with the Northwestern matter for purposes of trial.

---

[1] On January 18, 2011, Northwestern filed a suggestion of death as to Feingold. By order dated September 1, 2011, the Honorable Joseph F. Bianco, United States District Judge, denied Feingold's pro se motion to dismiss the complaint as against him without prejudice to renewal (a) after the issue of subject matter jurisdiction was determined by the Court and (b) if a party was substituted for Feingold. On May 22, 2012, the Court granted the motion of Northwestern and Lugli to substitute the Estate of Harry Feingold for Feingold pursuant to Rule 25(a) of the Federal Rules of Civil Procedure.

[2] Lugli's and Northwestern's claims against Snider were subsequently voluntarily dismissed with prejudice. See [Docket Entry No. 42]. Prior to the dismissal of the claims against him, Snider asserted a counterclaim against Lugli and Northwestern alleging that they conducted an "illegal 'Ponzi' scheme." [Docket Entry No. 14].

III.  Summary Judgment Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Id. (internal quotation marks and citations omitted). "[P]roceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment." Viscusi v. Proctor & Gamble, No. 05-CV-1528, 2007 WL 2071546, at *9 (E.D.N.Y. July 16,

2007). However, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted); Thompson v. Tom Vazquez Janitorial, No. 05-CV-808, 2006 WL 3422664, at *2 (E.D.N.Y. Nov. 28, 2006) ("[The court] must construe the pro se plaintiff's claim liberally in deciding the motion for summary judgment.").

IV. Discussion

A. Accounting Claim[3]

Defendants assert that plaintiff's claim for an accounting must be dismissed because: (1) plaintiff and defendants "did not have a relationship of a mutual and confidential nature [and] . . . it is well settled that an equitable action for an accounting will not lie in the absence of a fiduciary relationship between the parties"; and (2) defendants "never saw nor received [p]laintiff's money at any time." Def. Memo. at 7-9 (internal quotation marks omitted). According to defendants, they shared with plaintiff "nothing more than a conventional business relationship . . . and there were no 'special circumstances' that transformed the business relationship . . . into something more." Pl. Memo. at 8-9. Lugli further asserts that "it is clear from the documentary record that it was Bloom, Bloom's wife, and Harry Feingold who took [plaintiff's] money." Lugli Aff. at ¶ 12.

"'The basis for an equitable action for [an] accounting is the existence of a fiduciary or trust relationship respecting the subject matter of the controversy. . . . The fiduciary relationship necessary to obtain an accounting is created by the plaintiff entrusting to the defendant some

---

[3] Although the Amended Joint Venture Agreement states that the agreement "shall be governed by the laws of the state of Nevada," a claim for an accounting is an equitable claim that is not governed by a contractual choice-of-law provision. See Gross Found., Inc. v. Goldner, 2012 WL 6021441, at *11 (E.D.N.Y. Dec. 4, 2012).

6

money or property with respect to which the defendant is bound to reveal his dealings.'" Bouley v. Bouley, 797 N.Y.S.2d 221, 223 (App. Div. 2005) (quoting Stevens v. St. Joseph's Hosp., 381 N.Y.S.2d 927, 928 (App. Div. 1976)); see also Waldman v. Englishtown Sportswear, Ltd., 460 N.Y.S.2d 552, 556 (App. Div. 1983) ("The existence of a fiduciary relationship is essential for a cause of action in equity for an accounting arising out of the contract between the parties."). "[T]he burden of proof in justifying the charges and showing that he has derived no unfair advantage from his fiduciary relation is on the accounting party." Vinlis Constr. Co. v. Roreck, 291 N.Y.S.2d 924, 925-26 (App. Div. 1968). "If a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property." Soley v. Wasserman, 823 F. Supp.2d 221, 237 (S.D.N.Y. 2011) (citing Wilde v. Wilde, 576 F. Supp.2d 595, 607 (S.D.N.Y. 2008)).

It is well-established that joint venturers owe one another fiduciary duties, see, e.g., Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd., 909 F.2d 698, 701 (2d Cir. 1990) ("[A] joint venture 'is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership.'") (quoting Gramercy Equities v. Dumont, 72 N.Y.2d 560, 565 (1988)); Le Bel v. Donovan, 945 N.Y.S.2d 669, 671 (App. Div. 2012) ("Under New York law, partners owe each other a fiduciary duty."); Timely Prods. Corp. v. Arron, 523 F.2d 288, 302-03 (2d Cir. 1975) (characterizing relationship between joint venturers as "one of mutual trust and confidence"); Panther Sys. II, Ltd. v. Panther Computer Sys., 783 F. Supp. 53, 64 (E.D.N.Y. Nov. 29, 1991) ("[A] fiduciary duty exists between members of a joint venture."); Meinhard v. Salmon, 249 N.Y. 458, 462 (1928) (stating that "coadventurers [are] subject to fiduciary duties akin to those of partners"), and defendants

have failed to show that no fiduciary relationship existed between plaintiff and Northwestern as a matter of law.

"In order to establish a joint venture under New York law, '(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.'" Fetter v. Schink, No. 11-CV-6239, 2012 WL 4510684, at *3 (S.D.N.Y. Oct. 1, 2012) (quoting Itel Containers, 909 F.2d at 701).[4] "Parties can evince their intent to be joined as joint venturers expressly through language in an agreement or impliedly through actions and conduct." Cosy Goose Hellas v. Cosy Goose USA, Ltd., 581 F. Supp.2d 606, 620 (S.D.N.Y. 2008). Although defendants characterize their dealings with plaintiff as an "ordinary business relationship," Northwestern's intention to enter into a joint venture with plaintiff is plain from the face of the agreement, as it states explicitly that "[t]he Venturers do hereby form a partnership pursuant to the laws of the State of Nevada in order for the Venture to carry on the purposes for which provision is made herein." See, e.g., Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."). Moreover, the terms of the agreement and the conduct of the parties are consistent with a joint venture: (1)

---

[4] Although the parties have not raised the issue, Nevada law governing joint ventures does not appear to differ from New York law in any manner relevant to the pending motion. See Radaker v. Scott, 109 Nev. 653, 658 (1993) ("A joint venture is a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses.") (internal quotation marks omitted).

each party contributed funding,[5] and plaintiff has submitted evidence that he also contributed advice and guidance with respect to the architectural and engineering plans, see Pl. Aff. Ex. G; (2) the agreement provides that Northwestern would retain control over the project "until its initial capital and loans are repaid" but that plaintiff would have ten percent (10.00%) voting power on the "Policy Committee" thereafter; and (3) the agreement provides for proportionate sharing of profits and losses among the parties. Therefore, defendants have failed to establish as a matter of law that plaintiff and Northwestern were not joint venturers.[6]

Defendants have also failed to establish as a matter of law that no genuine issue of material fact exists with respect to whether plaintiff entrusted property to defendants. The evidence before the Court, resolving all ambiguities and crediting all factual inferences that could rationally be drawn in favor of plaintiff, supports plaintiff's contention that his investment was received by defendants. Defendants entered into an agreement giving plaintiff a ten percent (10.00%) interest in the Bay Shore joint venture, and a finder of fact may not credit defendants' apparent assertion that this interest was given to plaintiff despite defendants never having received his investment. See Def. Memo. at 4 ("Neither Defendant ever received any portion of Snider's money, though Mr. Snider was accepted as a co-venturer."). Furthermore, the timing of plaintiff's payment of approximately one hundred thousand dollars ($100,000.00) to Savanna Development coincides with defendants' obligation to pay one hundred thousand dollars ($100,000.00) to Bloom under the buyout agreement, and plaintiff has provided an email from

---

[5] As discussed below, defendants have not established as a matter of law that plaintiff did not contribute funding to the venture.

[6] Although the evidence appears to support the opposite conclusion (that Northwestern owed plaintiff a fiduciary duty as a matter of law), plaintiff has not moved for summary judgment on the issue.

Lugli in which Lugli acknowledges that plaintiff's money is "tie[]d up" in the joint venture. See Pl. Aff. Ex. H.

According to Lugli, "it is believed that Feingold induced [plaintiff] to purchase a 10% [share] of the Bay Shore Joint Venture to help effectuate Bloom's withdrawal, and it is believed that Feingold instructed [plaintiff] to write a check for $102,500.00 made payable to 'Savannah Development,' a Feingold-controlled entity." Def. Memo. at 4. Lugli states that approximately seventy-five thousand dollars ($75,000.00) was transferred to Elizabeth Bloom and "[t]he balance was retained by Feingold and Defendants never received any of it." Def. Memo. at 4. However, defendants have only offered Lugli's unsubstantiated and self-serving affidavit in support of this allegation. The record of a wire transfer between Feingold and Elizabeth Bloom, Lufli Aff. Ex. H, does not demonstrate that the money being transferred was taken from plaintiff, or that the money was not being transferred to Bloom at Lugli's direction to satisfy defendants' obligations under the buyout agreement. Furthermore, the assertion that Savannah Development was a corporation controlled by Feingold is unsubstantiated and does not establish the ultimate destination of plaintiff's funds, particularly in light of defendants' acknowledgement that Lugli had a prior relationship with Feingold and that Feingold was acting as an intermediary between plaintiff and defendants in the lead-up to plaintiff's investment in the joint venture. See Lugli Aff. at ¶ 4.

For the foregoing reasons, defendants' motion for summary judgment on plaintiff's claim against Northwestern for an accounting is denied.[7] However, the motion is granted insofar as

---

[7] Defendants' assertion that they "have accounted for [plaintiff's] money," Lugli Aff. ¶ 12, does not alter the Court's finding, as they have offered no evidence of having done so, and "[c]ourts applying New York law have repeatedly observed that an action for an accounting is not mooted by the production of financial documents." Soley v. Wasserman, No. 08-CV-9262, 2013 WL 526732, at *6 (S.D.N.Y. Feb. 13, 2013).

plaintiff has asserted a claim for an accounting against Lugli, as Lugli is not a party to the Amended Joint Venture Agreement and plaintiff has failed to offer any other basis for the Court to conclude that Lugli owed plaintiff a fiduciary duty.

B.  Breach of Contract[8]

Although "New York law provides that the sole method for winding up a partnership or a joint venture is through an accounting to determine the parties' rights," and that "no action at law may be maintained prior to an accounting," Kitty Walk Sys., Inc. v. Midnight Pass Inc., 431 F. Supp.2d 306, 311 (E.D.N.Y. 2006), where "a partner commences to dissolve a partnership before the end of the term agreed upon, or where prior to the commencement of the partnership or joint venture he disaffirms the underlying partnership contract, he is liable in an action at law for damages." Ebker v. Tan Jay Int'l Ltd., 741 F. Supp. 448, 467 (S.D.N.Y. 1990) (citing Crownshield Trading Corp. v. Earle, 192 N.Y.S. 304, 309 (App. Div. 1922)). Because plaintiff has testified that defendants have, or are in the process of, terminating the joint venture in breach of the parties' agreement, the Court will address plaintiff's claims at law, including for breach of contract, despite the fact that an accounting has not been completed.

According to defendants, plaintiff's breach of contract claim must be dismissed because "there is no provision in the written Agreement whereby [d]efendants promised to reimburse [p]laintiff for some or all of his investment in the event that the Bay Shore Joint Venture could not be completed or was not profitable, nor are [d]efendants contractually obligated to provide

---

[8] Since defendants rely upon New York law throughout their submissions to the Court, and plaintiff has not addressed the issue, the Court presumes that the parties have consented to the application of New York law. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138-39 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'") (quoting Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) ("Here, the parties' briefs assume that New York law controls this issue, and such implied consent is sufficient to establish choice of law.").

11

any additional monies or financing to bring the Joint Venture to fruition, and no where in the written Agreement does it state that [defendants] assume liability in the event that the Joint Venture could not be completed." Def. Memo. at 12.

Plaintiff has testified that around December 2008 "Lugli deliberately stopped moving the project forward, stating that the recession was the cause although it was his sole decision notwithstanding the Joint Venture Agreement and [plaintiff's] investment." Pl. Aff. at ¶ 10. The Court construes plaintiff's testimony as asserting that the joint venture was terminated in a manner inconsistent with the parties' agreement. Plaintiff's testimony that defendants ceased progress on the venture is supported by an email from Lugli to plaintiff dated October 21, 2008 stating, "I am sorry that your money is tired [sic] up for so long. . . . [A]ll I want to happen is a sale close and get some of our money back." Pl. Aff. Ex. H.

The Amended Joint Venture agreement was formed for a specific purpose, i.e., the "construction and sale of entry level housing style houses" on the Bay Shore property, and defendants have not established that the agreement was terminable at will. In fact, the Amended Joint Venture Agreement states that the venture "shall be terminated and dissolved, unless extended in writing, upon the earliest to occur of: (i) the unanimous agreement of the Ventures [sic]; (ii) the order of a court of competent jurisdiction; (iii) the completion and sale of all of the Houses and the payment of all Venture debts and distribution of all net sale proceeds as provided for in this Agreement." Amended Joint Venture Agreement, Art. IV. Defendants have not offered evidence that any of the foregoing conditions were met prior to December 2008.

Although a joint venturer may repudiate a joint venture agreement at any time since "[n]o one can be forced to continue as partner against his will[,] [he] may be liable for breach of contract." Eskanazi v. Schapiro, 812 N.Y.S.2d 474, 477 (App. Div. 2006). Defendants have

failed to demonstrate the absence of a genuine issue of material fact with respect to whether the venture was terminated in accordance with the terms of the parties' agreement. Moreover, to the extent the venture has been terminated, defendants have not shown that Northwestern has complied with its obligation to provide an accounting to plaintiff. Therefore, defendants' motion for summary judgment is denied with respect to plaintiff's claim for breach of contract against Northwestern. Insofar as plaintiff has also asserted a claim for breach of contract against Lugli, the claim is dismissed, as Lugli is not a party to the Amended Joint Venture Agreement.

C. Breach of Fiduciary Duty

Defendants argue that plaintiff's breach of fiduciary duty claim must be dismissed because: (1) the relationship between plaintiff and defendants "never rose to the level of a fiduciary relationship"; (2) "there is no proof that [d]efendants breached the written Agreement in any way or that the failure of the Bay Shore Joint Venture was attributable to the [d]efendants"; and (3) the breach of fiduciary duty claim is duplicative of plaintiff's breach of contract claim.

"[W]here a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract and must be dismissed." Northern Shipping Funds I, LLC v. Icon Capital Corp., No. 12-CV-3584, 2013 WL 440632, at *8 (S.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted); see also Barbara v. MarineMax, Inc., No. 12-CV-368, 2012 WL 6025604, at *9 (E.D.N.Y. Dec. 4, 2012) ("If the breach of fiduciary duty claim indeed arises from the duties imposed by the [contract], the claim is duplicative of the breach of contract claim, and is . . . subject to dismissal."). Since plaintiff has failed to allege the existence of a fiduciary relationship between plaintiff and defendants that is separate from the duties created under the Amended Joint Venture Agreement,

13

plaintiff's breach of fiduciary duty claim is duplicative of his breach of contract claim and must be dismissed.

Therefore, defendants' motion for summary judgment on plaintiff's breach of fiduciary duty claim is granted.

C.  Fraud

Defendants argue that plaintiff's fraud claim must be dismissed because (1) plaintiff has failed to offer evidence of a misrepresentation made by defendants or of defendants' intent to defraud plaintiff and (2) the claim is duplicative of plaintiff's breach of contract claim. Def. Memo. at 12-13. According to defendants, "any alleged misrepresentations or other inducements upon which Plaintiff relied would be extra-contractual and directly contrary to [d]efendants' obligations under the unambiguous, fully integrated written Agreement between the parties which did not provide for the reimbursement of [p]laintiff's money in the event the Bay Shore Joint Venture was not successful." Def. Memo. at 13.

To establish a claim for fraud, plaintiff must prove "'a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiffs and damages.'" Bianchi v. Midtown Reporting Serv., Inc., No. 00863, Slip. Op., 2013 WL 474720, at *1 (N.Y. App. Div. Feb. 8, 2013) (quoting Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (2009)). "A fraud claim that merely alleges that 'intentionally false statements' were made by a party 'indicating his intent to perform under [a particular] contract' is duplicative of the underlying breach of contract claim, however, and must be dismissed as a matter of law." Revonate Mfg., LLC v. Acer Am. Corp., No. 12-CV-6017, 2013 WL 342922, at *3 (S.D.N.Y. Jan. 18, 2013) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13 (2d Cir. 1996)). "[P]arallel fraud and contract claims may be brought if the plaintiff

14

(1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir.2007) (citing Bridgestone/Firestone, 98 F.3d at 20).

Plaintiff's allegation that "Lugli never intended to develop the project, nor to spend any money required of him to be spent on the project, and instead to 'flip' the project to a buyer and to realize a financial profit from that 'flip,'" Compl. at ¶ 12, is duplicative of his breach of contract claim. See Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992) ("[New York law] distin[guishes] between a prospective business partner's promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representations of present fact, which give rise to a separable claim of fraudulent inducement." ) (internal quotation marks and alterations omitted). Plaintiff also alleges that "Lugli falsely represented to [him] that the construction and development phase of the [joint venture] had begun prior to [his] investment." Compl. at ¶ 12. Although a misrepresentation of "present facts that induced the plaintiff to enter into a contract . . . give[s] rise to a non-duplicative fraud claim," 246 Sears Road Realty Corp. v. Exxon Mobil Corp., No. 09-CV-889, 2012 WL 4174862, at *16 (E.D.N.Y. Sept. 18, 2012); Liberty Mut. Ins. Co. v. Harvey Gerstman Assocs., No. 11-CV-4825, 2012 WL 5289606, at *10 (E.D.N.Y. Sept. 13, 2012) ("[A] claim for fraudulent inducement may proceed regardless of whether it is factually duplicative of a claim sounding in contract law, so long as the alleged fraud was collateral to the contract and served as an inducement for the contract.") (internal quotation marks and alterations omitted), plaintiff has failed to offer any evidence of this misrepresentation beyond the allegation in his complaint, which is not verified. Cf. Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004)

("[A] verified pleading . . . has the effect of an affidavit and may be relied on to oppose summary judgment."). "Even a pro se plaintiff . . . cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint." Saldana v. Local 32B-32J Serv. Emps. Int'l Union, No. 03-CV-1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005). Therefore, defendants' motion for summary judgment on plaintiff's fraud claim is granted.

III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Docket Entry No. 25] is GRANTED insofar as all claims against Lugli and the claims against Northwestern for fraud and breach of fiduciary duty are dismissed. The motion is DENIED with respect to plaintiff's claims against Northwestern for an accounting and for breach of contract.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: March 7, 2013
Central Islip, New York